[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13854
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-00398-TCB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BJORN JAMAL GREEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 25, 2014)

Before HULL, MARCUS, and ANDERSON, Circuit Judges.

PER CURIAM:

Bjorn Jamal Green appeals his sentences imposed following the revocation of his supervised release based on Georgia state convictions.  In August 2013, the probation office filed a second amended petition alleging the following new violations of law: (A) driving on a suspended license in April 2012; (B) an additional instance of driving on a suspended license in April 2012; (C) battery against a pregnant female and family violence battery in May 2012; (D) giving a false name to a policeman in September 2012; and (E) two instances of cruelty to children and one instance of family violence battery in July 2013.

At the revocation hearing, Green contended that none of his alleged new violations of law constituted anything higher than a Grade C violation of his supervised release.  He characterized the July 2013 convictions as being for third-degree cruelty to children and simple battery.  Green conceded that the July 2013 conviction would have been his second family violence battery conviction, but he argued that it was reduced to a simple battery, so the district court would have to establish the underlying conduct amounted to family violence battery in order to find a Grade A violation.

Officer M.S. Bailey and Detective H.C. Amos both testified that they spoke to Korlus Freeman ("Korlus") and Amanda Freeman ("Amanda") in response to an emergency call.  Both of their testimonies were based on statements that Korlus and Amanda had made immediately after the incident, and Bailey described Korlus

2

and Amanda as frantic when she arrived. Their testimony was that Green got into an argument with Korlus outside of Amanda's apartment and eventually began choking Korlus and threatening to throw her over the balcony. After Korlus yelled to Amanda for help, Green went into the apartment, threw his and Korlus's baby into the air, and let the baby bounce off the sofa and onto the floor. It was subsequently determined that the baby had a fractured skull.

Amanda testified that she was grabbing Green, which caused him to accidentally drop the baby. However, she conceded that she told police that Green had thrown the baby up in the air. She stated that she was very angry and had trouble focusing when she spoke with the police. At the revocation hearing, she admitted that she did not clearly remember what happened on the night of the incident.

The district court concluded that a Grade A violation had occurred, based on its conclusions that Green's relevant conduct constituted first-degree cruelty to children and family violence battery. The court relied on the testimonies of Bailey and Amos, and explained that Amanda's testimony was less reliable because she admitted that she could not clearly remember what happened. The court then imposed a total sentence of 21 months' imprisonment that was to be followed by an additional 3-month term of supervised release to be served in a half-way house.

On appeal, Green argues that the district court's conclusion that he had committed a Grade A violation was based upon clearly erroneous factual findings. For the first time on appeal, he contends that Bailey and Amos's testimonies consisted of impermissible hearsay statements from Korlus and Amanda. He asserts that the district court was required to make findings with regard to the reliability or credibility of the hearsay statements before relying upon them. Further, he argues, the court's disqualification of Amanda's testimony casts further doubt on the reliability of the officers' statements because their statements were based in part on their respective interviews of Amanda. Finally, he concludes that the government failed to satisfy its burden of establishing that Green had committed first-degree cruelty to children or family violence battery to substantiate the court's finding of a Grade A violation.

We generally review a sentence imposed upon revocation of supervised release for reasonableness. *United States v. Sweeting*, 437 F.3d 1105, 1106-07 (11th Cir. 2006). We review findings of fact under the clearly erroneous standard. *United States v. Almand*, 992 F.2d 316, 318 (11th Cir. 1993). Evidentiary objections that are not specifically raised at trial are reviewed for plain error only. *United States v. Williford*, 764 F.2d 1493, 1502 (11th Cir. 1985).

A sentence may be procedurally unreasonable if the court fails to properly calculate the appropriate guidelines range. *Gall v. United States*, 552 U.S. 38, 50,

128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007).  The guideline range applicable upon revocation of supervised release is set forth in U.S.S.G. § 7B1.4(a).  The guideline range is affected by what Grade the violation is classified as.  U.S.S.G. § 7B1.4(a).

Under plain error review, the defendant must show: "'(1) error, (2) that is plain, and (3) that affects substantial rights.'"  *United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005) (citation omitted).  We may then exercise our discretion to notice a forfeited error, but only if "'the error seriously affects the fairness, integrity, or public reputation of judicial proceedings.'"  *Id*. (citation omitted).  Under the plain error standard, error affects a defendant's substantial rights where that error affected the outcome of the case.  *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 1778, 123 L.Ed.2d 508 (1993).  There can be no plain error where there is no statute, rule, or binding precedent in this Court directly resolving the issue.  *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

A defendant facing possible revocation of supervised release is entitled to some, but not all, of the procedural protections afforded a defendant in a criminal proceeding.  *United States v. Copeland*, 20 F.3d 412, 414 (11th Cir. 1994).  In *Frazier*, we held that the Federal Rules of Evidence do not apply in revocation of supervised release proceedings.  *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1994).  Nevertheless, defendants are still entitled to certain minimal due

5

process requirements, and the admissibility of hearsay is not automatic. *Id.* In deciding whether or not to admit hearsay, the court must balance the defendant's right to confront adverse witnesses against the grounds asserted by the government for denying confrontation. *Id.* Failure to conduct this balancing test constitutes a violation of due process. *Id.*

Once it is established that the admission of hearsay violated due process, the defendant bears the burden of showing that the court explicitly relied on the hearsay in revoking his supervised release. *United States v. Taylor*, 931 F.2d 842, 847 (11th Cir. 1991). The defendant must show: (1) that the challenged hearsay is materially false or unreliable; and (2) that the challenged hearsay served as the basis for the sentence. *Id.* We have stated that the absence of a district court's findings regarding the reliability of hearsay statements does not necessarily require reversal or remand where the reliability of the statements is apparent from the record. *United States v. Gordon*, 231 F.3d 750, 761 (11th Cir. 2000).

Rule 803(2) of the Federal Rules of Evidence creates an exception for "excited utterances," which are statements "relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed.R.Evid. 803(2). We have explained that the excited utterance exception does not require that the statement be made contemporaneously with the startling event. *United States v. Belfast*, 611 F.3d 783, 817 (11th Cir. 2010).

6

Rather, courts ruling on the exception should consider the totality of the circumstances to determine if the declarant was still under the stress or excitement of the startling event at the time she made the statement. *Id.*

Green's sentences are procedurally reasonable. Bailey described Korlus and Amanda as frantic and Amanda admitted that she was very angry and had trouble focusing when she spoke with the police. As Korlus and Amanda were both still under the stress of the incident with Green, their statements would have been admissible as excited utterances even under the stricter trial rules of admissibility. *See* Fed.R.Evid. 803(2); *see also Frazier*, 26 F.3d at 114 (explaining that the Federal Rules of Evidence do not apply in supervised release revocation proceedings). As such, the district court did not plainly err in admitting the statements or in relying upon them.

Even assuming that a *Frazier* balancing test was appropriate in these proceedings, there is no controlling authority that states that the district court must explicitly engage in a *Frazier* balancing test in the absence of a contemporaneous objection. *See Lejarde-Rada*, 319 F.3d at 1291. Thus, Green has not established that the district court erred in admitting Bailey and Amos's testimonies. As a result, the district court correctly concluded that Green had committed a Grade A violation, and his guideline range was properly calculated. Accordingly, Green's sentences are reasonable, and we affirm the district court.

**AFFIRMED.**